**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 15, 2013**

# In the Court of Appeals of Georgia

A13A1487. CENTER FOR A SUSTAINABLE COAST, INC. v. TURNER.

A13A1488. TURNER v. CENTER FOR A SUSTAINABLE COAST, INC.

BOGGS, Judge.

In this discretionary appeal and cross-appeal, the parties appeal from a superior court order affirming an administrative law judge's (ALJ) decision affirming a consent order between a property owner, Lance Toland, and the Director of the Environmental Protection Division (EPD), Judson Turner. In Case No. A13A1488, the EPD contends in related enumerations of error that the ALJ and superior court erred by concluding that the Center for a Sustainable Coast, Inc. ("the Center") had standing to appeal the consent order under OCGA § 12-2-2 (c) (3) (A). In Case No. A13A1487, the Center asserts in related enumerations of error that the ALJ and the

superior court erred as a matter of law by affirming the consent order. Based on our conclusion that the Center lacked standing, we dismiss its appeal in Case No. A13A1487 and vacate the superior court's order affirming the ALJ's decision on the merits in A13A1488.

This case concerns the Erosion and Sedimentation Act of 1975, OCGA § 12-7-1, et seq. ("the Act"). The Environmental Protection Division of the Georgia Department of Natural Resources is charged with enforcing violations of the Act. See OCGA §§ 12-7-3 (4) (definition of director) and 12-7-12 (a) (director may issue orders to violators of act). The General Assembly has stated its intent and policy for the Act as follows:

> It is found that soil erosion and sediment deposition onto lands and into waters within the watersheds of this state are occurring as a result of widespread failure to apply proper soil erosion and sedimentation control practices in land clearing, soil movement, and construction activities and that such erosion and sediment deposition result in pollution of state waters and damage to domestic, agricultural, recreational, fish and wildlife, and other resource uses. It is therefore declared to be the policy of this state and the intent of this chapter to strengthen and extend the present erosion and sediment control activities and programs of this state and to provide for the establishment and implementation of a state-wide comprehensive soil erosion and sediment

2

control program to conserve and protect the land, water, air, and other resources of this state.

OCGA § 12-7-2.

The Act "established a 25 foot buffer along the banks of all state waters." OCGA § 12-7-6 (b) (15) (a). Following its receipt of a complaint, the EPD investigated and determined that Toland constructed an approximately 170-foot long bulkhead in a salt-water marsh area within the 25-foot buffer without first requesting a variance pursuant to the Act. See Ga. Comp. R. & Regs. 391-3-7-.05 (landowners may apply for a buffer variance under certain circumstances, upon application to EPD).

In four related enumerations of error, the EPD contends that the ALJ erred by concluding that the Center had standing to appeal the consent order.[1] "In reviewing the decision of the superior court affirming the ALJ, we affirm as to evidentiary issues if there was any evidence to support the ALJ's decision, and conduct a de novo

---

[1] We note that even though the EPD failed to appeal the portion of the ALJ's order relating to standing in the superior court, we nonetheless have jurisdiction to consider its cross-appeal. See, e.g., *Coastal Marshlands Protection Committee v. Center for a Sustainable Coast*, 286 Ga. App. 518, 521 (1) (649 SE2d 619) (2007). See also *St. John's Melkite Catholic Church v. Comm. of Revenue*, 240 Ga. 733, 734 (242 SE2d 108) (1978) (appellate court may raise standing issue sua sponte).

3

review with respect to claimed errors of law." *Coastal Marshlands Protection Committee v. Center for a Sustainable Coast*, 286 Ga. App. 518, 529 (3) (649 SE2d 619) (2007).

The Act provides:

All hearings on and review of contested matters, *orders*, or permits issued by or filed against the director and all hearings on and review of any other enforcement actions or *orders* initiated by the director under this chapter shall be provided and conducted in accordance with subsection (c) of Code Section 12-2-2. The hearing and review procedure provided in this Code section is to the exclusion of all other means of hearings or review.

(Emphasis supplied.) OCGA § 12-7-16. And OCGA § 12-2-2 (c) (2) (A) provides:

Any person who is *aggrieved or adversely affected by any order or action of the director shall*, upon petition to the director within 30 days after the issuance of such order or the taking of such action, *have a right to a hearing before an administrative law judge* of the Office of State Administrative Hearings assigned under Code Section 50-13-40 and acting in place of the Board of Natural Resources. The hearing before the administrative law judge shall be conducted in accordance with Chapter 13 of Title 50, the "Georgia Administrative Procedure Act," and the rules and regulations adopted by the board pursuant thereto.

(Emphasis supplied.) Id. A party is "aggrieved or adversely affected" if

the *challenged action has caused or will cause them injury in fact and where the injury is to an interest within the zone of interests to be protected or regulated by the statutes that the director is empowered to administer and enforce.* In the event the director asserts in response to the petition before the administrative law judge that the petitioner is not aggrieved or adversely affected, the administrative law judge shall take evidence and hear arguments on this issue and thereafter make a ruling on this issue before continuing with the hearing. The burden of going forward with evidence on this issue shall rest with the petitioner.

OCGA § 12-2-2 (c) (3) (A).

In addition to asserting that the Center suffered no "injury in fact" and that it failed to establish that its injury was to "an interest within the zone of interests to be protected or regulated," the EPD contends that the Center's alleged injury cannot be redressed by a favorable decision. As the Supreme Court of Georgia has recognized, "[i]n the absence of our own authority we frequently have looked to United States Supreme Court precedent concerning Article III standing to resolve issues of standing to bring a claim in Georgia's courts." *Feminist Women's Health Center v. Burgess*, 282 Ga. 433, 434 (1) (651 SE2d 36) (2007).

In the oft-cited *Friends of the Earth v. Laidlaw Environmental Svcs.*, 528 U. S. 167 (120 SCt 693, 145 LE2d 610) (2000), the Supreme Court held

5

to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

(Citations omitted.) Id. at 180-181 (II) (A). See also *Granite State Outdoor Advertising*, 283 Ga. 417, 418 (1) (658 SE2d 587) (2008) (noting redressability element of standing in federal jurisprudence). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth*, supra, 528 U. S. at 185 (II) (A). "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." (Citations and punctuation omitted.) Id. at 183 (II) (A). Finally, "when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." (Citation and

6

punctuation omitted.) *Summers v. Earth Island Inst.*, 555 U. S. 488, 493-494 (II) (129 SCt 1142, 173 LEd 2d 1) (2009). Stated differently, "[w]here a petitioner is not subject to the administration decision it challenges, courts are particularly disinclined to find that the requirements of standing are satisfied." *Kerm v. Fed. Communications Comm &c.*, 353 F3d 57, 59 (II) (D.C. Cir. 2004).

The record shows that the Center asserted in its initial petition that "[t]he Center and its members are and have been aggrieved and adversely affected by the Director's issuance . . . of [the] Consent Order." Specifically, it contended that

> the Director's decision to issue a Consent Order . . . effectively acts as an after-the-fact variance and allows the Site's bulkhead and associated fill constructed or placed within the buffer to remain in situ. The bulkhead and associated fill authorized by the Consent Order – after-the-fact – substantially interfere[s] with [t]he Center's and its members' use and enjoyment of the area, and cause extensive damage to the surrounding marsh ecosystem and the wildlife and environment in the vicinity of the project. Likewise, the Director's decision to issue the Consent Order effectively authorizing an after-the-fact-variance improperly circumvented the rights of [t]he Center and its members to engage in meaningful notice and comment. The injuries caused by the Director's decision, including to allow the bulkhead and associated fill, will not be redressed except by an Order by the [ALJ] declaring the Consent Order unlawful."

In its prayer for relief, the Center asked the ALJ to declare the consent order invalid and "find that the Consent Order issued by the Director be amended to require removal of the bulkhead and associated fill from the twenty-five foot buffer and to restore the marsh to its preconstruction condition."

Following an evidentiary hearing, the ALJ recited the following "credible evidence" to support its conclusion that the Center "established injury in fact for the purpose of standing:"

> The Petitioner is a not-for-profit membership corporation which was organized under the laws of the State of Georgia. The Petitioner was founded in 1997 and has approximately seventy (70) members. The Petitioner's purpose is "to promote the sustainable protection, enhancement, understanding, and appropriate use of the region's environmental, economic, social, historic, and cultural resources by providing coordinate research, advocacy, training, and professional consultation." The Petitioner has been funded and continually staffed since its founding in 1997. Members of the Petitioner pay dues in varying amounts. . . . In addition to dues, the Petitioner receives contributions from members in amounts as high as $5,000. The Petitioner communicates with its membership by publication of newsletters. The Petitioner engages in educational and advocacy activities through the publication of articles and submission of comments to regulatory authorities. The Petitioner initiates litigation on

8

the basis of decisions made by the Board of Directors by means of e-mail and telephonic communications. . . .

[O]ne of the individual members of the Petitioner association testified as to the injuries he has suffered by the Respondent's issuance of the Consent Order. . . . Mr. Holland is a founding member of the Petitioner association and remains an active member of the Petitioner. . . . Mr. Holland's aerial observations of the Property in November, 2010, prompted his filing of a complaint with the Coastal Resources Division of the Georgia Department of Natural Resources. Mr. Holland fishes in Village Creek on a frequent basis and enjoys taking nature photography in the general area of Village Creek. Of significance, Mr. Holland's use of Village Creek for relaxation, fishing, and enjoyment of scenic beauty has been adversely impacted and diminished by the presence of the bulkhead on the buffer of the property. Mr. Holland is concerned that the presence of the bulkhead on the buffer of the property negatively impacts wildlife including rabbits, raccoons and birds. Further, Mr. Holland is concerned that the presence of the bulkhead on the Property allows the introduction of pollutants into the marsh and opines that its presence has changed the hydrology in the marsh. Mr. Holland does not contend that the bulkhead is visible from Village Creek.

Dr. Joseph Richardson, who is the holder of a Ph.D. in Marine Science and a Professor Emeritus at Savannah State University, testified regarding the negative impact of the continued presence of the bulkhead on sedimentation entering the marsh environment. Dr. Richardson

9

opined that the construction of the bulkhead has destroyed the buffer zone on the Property, removed the vegetative diversity found on the Property's buffer zone, buries micro-fauna and microbes within the soil of the Property's buffer zone and created point source pollution directly into the marsh.

The ALJ also concluded that the Center "established injury in fact to the zone of interests protected or regulated by the statutes which the Respondent is empowered to administer and enforce." Specifically, it noted that the Center "contends that the Consent Order violates the protections afforded by the Act to the twenty-five (25) foot buffer on the Property" and that it "serves as an 'after-the-fact' variance, the terms of which do not comply with the [EPD]'s regulations." The ALJ did not analyze the redressability of the Center's claimed injury even though it was briefed by the parties below.

This court reviews questions of law de novo in a appeal from an ALJ decision. See *Coastal Marshlands*, supra, 286 Ga. App. at 529 (3). In this case, we conclude that the Center lacks standing to appeal based upon its inability to demonstrate redressability. "The element of redressablity requires that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." (Citations and punctuation omitted.) *Florida Wildlife Federation v. South Florida Water Mgmt. Dist.*, 647 F3d 1296, 1305-1306 (II) (B) (11th Cir. 2011).[2]

In this case, the ALJ's finding of injury in fact rested upon the continued presence of the bulkhead and fill-in materials in the buffer zone. But even if this Court, or the ALJ, were to vacate the consent order, the bulkhead and fill-in materials would still exist in the buffer zone. See id. at 1306 (II) (B). And, as properly asserted by the EPD on appeal, the ALJ did not have authority to require the Director of the EPD to include a specific provision in a consent order. See *Upper Chattahoochee Riverkeeper v. Forsyth County*, 318 Ga. App. 499, 506-507 (4) (734 SE2d 242) (2012) (superior court properly concluded that ALJ exceeded authority by ordering director of EPD to revise permit limits).

---

[2] This is not a "procedural injury" case. "Where plaintiffs allege injury resulting from violations of a procedural right afforded to them by statute and designed to protect their threatened concrete interest, the courts relax – while not wholly eliminating – the issues of imminence and redressability, but not the issues of injury in fact or causation." (Citation omitted.) *Defenders of Wildlife v. Perciasepe*, 714 F3d 1317, 1323 (II) (A) (1) (D.C. Cir. 2013). In this case, the Center has not identified a procedural requirement the EPD violated by agreeing to the consent decree, and the consent order does not fall within those categories of administrative consent orders that require provision of notice and opportunity for comment. See Ga. Comp. R. & Regs. r. 391-1-3-.01 (2).

11

Nothing in the Act required the Director to order the removal of the bulkhead and fill-in material as part of a negotiated enforcement action. The Act gives the Director of the EPD discretion with respect to whether and how to take enforcement action against the landowner. When a violation of the Act occurs, "the director *may* issue an order directed to such violator or violators." (Emphasis supplied) OCGA § 12-7-12 (a). The issuance of this order and its contents are discretionary. "The order . . . *may* require that land-disturbing activity be stopped until necessary corrective action and mitigation have been taken or *may* require that necessary corrective action and mitigation be taken within a reasonable time to be prescribed in the order." (Emphasis supplied) OCGA § 12-7-12 (a).[3]

We therefore conclude that it is unlikely that the Center's claimed "injury will be redressed by a favorable decision." *Florida Wildlife Federation*, supra, 647 F3d 1306-1307 (II) (B). In so holding, we note that in an analogous circumstance, the Supreme Court of Georgia has concluded: "A citizen does not have judicially cognizable interest in the prosecution or nonprosecution of another and, hence, lacks standing to contest the prosecuting authority's policies when the citizen is neither

---

[3] This Code provision also provides that "any such order shall become final unless the person or persons named therein request, in writing, a hearing pursuant to Code Section 12-7-6."

12

prosecuted nor threatened with prosecution." *Scanlon v. State Bar of Georgia*, 264 Ga. 251, 253 (2) (443 SE2d 830) (1994). The Supreme Court has also refused to find an action for mandamus is warranted when a public officer exercises discretion and fails to seek legal recourse to stop a practice in violation of the Act the officer is charged with enforcing. *Bland Farms v. Georgia Dept. of Agriculture*, 281 Ga. 192, 194 (637 SE2d 37) (2006). It reasoned,

> [a]n agency must not only assess whether a violation has occurred, but whether agency resources are best spent on this violation or another, whether the agency is likely to succeed if it acts, whether the particular enforcement action requested best fits the agency's overall policies, and, indeed, whether the agency has enough resources to undertake the action at all.

(Citation and punctuation omitted.) Id. at 194-195.

Based upon our conclusion that the Center lacked standing, we dismiss its appeal in Case No. A13A1487 and vacate the superior court's order affirming the ALJ's decision in Case A13A1488. See *Sherman v. City of Atlanta*, 293 Ga. 169, 173 (3) (744 SE2d 689) (2013) (dismissing appeal based upon lack of standing).

*Appeal dismissed in Case No. A13A1487. Judgment vacated in Case No. A13A1488. Doyle, P. J., and McFadden, J., concur.*

13