THIRD DIVISION
DILLARD, P. J.,
GOBEIL and PIPKIN, JJ.

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 16, 2026

# In the Court of Appeals of Georgia

A26A0455. BOAZ et al v. THIRTEEN HUNDRED ON LAKE NOTTELY PROPERTY OWNERS ASSOCIATION, INC.

PIPKIN, Judge.

Alan Boaz, Davis Freidman, Carol Freidman, and Bob Alma (collectively, "Appellants") brought this action against numerous parties, including their homeowners association, Thirteen Hundred On Lake Nottely Property Owners Association (hereinafter "the Association"). The Association filed a motion to dismiss under OCGA § 9-11-12(b)(1) and (6). After a hearing, the trial court granted the motion, concluding that Appellants did not have standing to file a direct action

against the Association.[1] Appellants now appeal this ruling. For the reasons that follow, we affirm the decision of the trial court as right for any reason.

1. When reviewing a trial court's ruling on a motion to dismiss pursuant to OCGA § 9-11-12(b)(1), we keep in mind that

> a motion brought under OCGA § 9-11-12(b)(1) asserts the defense of lack of jurisdiction over the subject matter. When a defendant challenges a plaintiff's standing by bringing an OCGA § 9-11-12(b)(1) motion, the plaintiff bears the burden of establishing that jurisdiction exists. A motion to dismiss for lack of subject-matter jurisdiction can allege either a facial challenge, in which the court accepts as true the allegations...of the complaint, or a factual challenge, which requires consideration of evidence....And we review de novo a trial court's grant of a motion to dismiss due to lack of subject-matter jurisdiction.

*Stillwell v. Topa Ins. Co.*, 363 Ga. App. 126, 127–28 (871 SE2d 8) (2022) (citation modified). Moreover, "standing is not dispensed in gross. That is, plaintiffs must demonstrate standing for each claim that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 61(II)(B)(1) (144 SCt 1972, 219 LE2d 604) (2024) (citation modified). See also *Center for a Sustainable*

---

[1] The trial court also determined that the Freidmans' individual claim for intentional infliction of emotional distress failed to state a claim for relief. In Appellants' stream-of-consciousness style briefing, they appear to concede that "under the set of facts set forth in their pleadings, Plaintiffs/Appellants could not establish a claim for intentional infliction of emotional distress (as ruled by the trial court)[.]" Accordingly, we do not review this ruling.

*Coast, Inc. v. Turner*, 324 Ga. App. 762, 765 (751 SE2d 555) (2013) ("A plaintiff must demonstrate standing separately for each form of relief sought."). With these principles in mind, we turn to the claim on appeal.

2. Appellants contend that the trial court erred when it dismissed their case against the Association based upon a lack of standing to bring a direct action. Viewing the relevant pleadings in the proper light, the record shows as follows. In July 2024, Appellants initiated a direct action against the Association and other named defendants,[2] amending their complaint four times during the proceedings. The fourth amended complaint, which controls here, alleged breach of contract, breach of fiduciary duty, intentional infliction of emotional distress, fraud and deception, tortious interference with real estate and defamation, punitive damages, and attorney fees. In every iteration of their complaint, Appellants sought injunctive and declaratory relief, requesting that the trial court dissolve the Association and remove the members of the board.

The Association moved to dismiss the action, arguing that, because Appellants' claims were derivative in nature, and because the declaration and amendments

---

[2] Those defendants are still named parties in the proceedings below and were not involved in the Association's motion to dismiss.

establishing the Association did not state an affirmative election to be governed by Georgia's Property Owners' Association Act, see OCGA § 44-3-220 et seq., Appellants were required to bring a derivative action against the Association under OCGA § 14-3-741 of the Georgia Nonprofit Corporation Code. The Association also asserted that Appellants lacked the authority to bring a derivative action under the controlling statute and that the action against the Association therefore should be dismissed. In their response, Appellants conceded that they could not bring a derivative action, but argued that OCGA § 44-5-60(d)(5) provided a "carve out" to the derivative action requirement of OCGA § 14-3-741 under which they had standing to bring a direct action against the Association. After conducting a lengthy statutory analysis, the trial court agreed with the Association, concluding that the Georgia Nonprofit Corporation Code controlled and that the plain language of OCGA § 44-5-60(d)(5) did not create an exception to OCGA § 14-3-741.

On appeal, Appellants continue to argue that the plain language of OCGA § 44-5-60(d)(5) provides an avenue for a homeowner to file a direct action against a

4

homeowners association.[3] Relying on the language of this code section, Appellants argue that they properly pled and established standing in the controlling complaint. Based upon the relevant pleadings in this case, we disagree.

OCGA § 44-5-60(d)(5) provides plot owners in a subdivision governed by an entity, such as a homeowners association, a means to ensure that the governing entity continues to operate as it should. In that vein, subsection (d)(5)(A) states:

> Notwithstanding and prior to the usual expiration of the period of covenants restricting land to certain uses affecting planned subdivisions containing no fewer than 15 individual plots as provided for by this subsection, the right to control any entity formed for the purpose of enforcing such covenants may pass to the subdivision plot owners as provided in this paragraph if such entity fails to do any of the following:
>> (i) Incorporate or maintain an annual registration pursuant to the terms of the covenants;
>> (ii) Cause the board of directors to be duly appointed and the officers to be elected pursuant to the terms of the covenants;

---

[3]Of course, "[m]embers or directors of nonprofit corporations may [] bring direct actions against the corporation, but only if the member suffered a special injury as a result of the corporate wrong." *Murray v. Lexington Park of Fulton Cnty. Cmty. Ass'n, Inc.*, 372 Ga. App. 269, 271(2) (904 SE2d 119) (2024). Though Appellants argued unsuccessfully in the trial court that they met this standard, they have not renewed this argument on appeal. Moreover, the trial court specifically determined that Appellants' action was derivative in nature, a conclusion that Appellants do not challenge on appeal. And, "[g]rounds that are not attacked as erroneous will not be considered on appeal and are presumed to be binding and correct." *Brown v. Fokes Props. 2002, Inc.*, 283 Ga. 231, 233(2) (657 SE2d 820) (2008).

(iii) Maintain and make available to owners, upon written request, a list of the names and business or home addresses of the entity's current directors and officers;

(iv) Call meetings of the members of the entity in accordance with the provisions of the covenants;

(v) Prepare an annual operating budget, establish the annual assessment, and distribute such budget and notice of assessment to plot owners in accordance with the provisions of the covenants no later than 30 days after the beginning of the entity's fiscal year; or

(vi) Pay property taxes on common property in the planned subdivision for two or more years.

OCGA § 44-5-60(d)(5)(A). Pursuant to subsection (d)(5)(B), if the governing entity does not "meet one or more of the obligations of this paragraph, then any plot owner, acting individually or jointly with other plot owners, may send such entity written notice of the failure to comply with such requirements and provide the entity a 30 day opportunity to cure the failure[.]" If the deficiency is not cured within the 30-day time frame, then

any plot owner, acting individually or jointly with other plot owners, shall have standing individually, and not solely through a derivative action, to institute an action in the superior court of the county in which any portion of the entity is located in order to obtain declaratory judgment to grant the plot owner or owners control of the entity *by ordering an election and setting the terms thereof, or issuing any other orders appropriate to transfer control of the entity*.

(Emphasis supplied).

Appellants argue that the trial court erred when it determined that the plain language of this subsection did not give Appellants standing to pursue a direct action in this case. Assuming without deciding that OCGA § 44-5-60(d)(5)(B) allows plot owners to bring a direct action for declaratory relief against their homeowners association, the trial court's dismissal of Appellants' action was proper because Appellants failed to establish they had standing, even under this statute. Indeed, Appellants did not seek a declaratory judgment requesting a new election or transfer of control as provided for by the statute; instead, they sought to have the entire Association dissolved and declared illegal, remedies for which the statute does not provide. Accordingly, even if we read the statute in the manner suggested by Appellants, they failed to properly plead and, therefore, trigger the standing for a direct action under this code section.

Consequently, though we disagree with the reasoning in the trial court's order, we agree with its ultimate conclusion dismissing the action and affirm as right for any reason. See *City of Gainesville v. Dodd*, 275 Ga. 834, 836 (573 SE2d 369) (2002) ("A judgment right for any reason will be affirmed by the appellate courts." (citation modified)).

*Judgment affirmed. Dillard, P. J., and Gobeil, J., concur.*

7