**SECOND DIVISION
MILLER, P. J.,
DOYLE and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**September 8, 2017**

# In the Court of Appeals of Georgia

A17A0878. CASH et al. v. LG ELECTRONICS, INC. et al.

MILLER, Presiding Judge.

This case involves a tragic fire at the home of appellant Debbie Cash, which resulted in the death of Cash's husband and son. Cash and her surviving daughter filed suit against LG Electronics, Inc.[1] alleging, among other claims, strict liability and negligence. Cash claims that the LG television in her living room was the cause of the fire, and in support she submitted the expert testimony of an engineer who attempted to recreate the origin of the fire. Upon LG's motion, the trial court excluded the expert's testimony, finding that the expert's opinion was not based on

---

[1] Defendants LG Electronics, U.S.A., Inc; Philips Electronics N. A. Corp.; The DirecTV Group, Inc.; SED International, Inc.; Flextronics International, USA; Homesmart; and Wal-Mart Stores, Inc. have been either dismissed from suit or granted summary judgment, and Cash does not challenge those rulings on appeal.

sufficient facts or reliable principles and methods, as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (113 SCt 2786, 125 LE2d 469) (1993). After excluding Cash's causation expert, the trial court granted summary judgment to LG based on the lack of competent and admissible evidence that there was a defect in the television that caused the fire. This appeal followed, and after a thorough review of the record, we affirm.

The evidence in this case shows that, on the morning of July 6, 2011, Cash's son woke up and went into the living room to watch TV. He then came into Cash's room and told Cash and her husband that the house was on fire. When Cash looked in the living room, she saw green-black smoke and that the entire entertainment center was on fire. When she and her husband were unable to extinguish the fire, Cash exited the house. Believing that her husband and son had already escaped, Cash went to a window and pulled her daughter out. Once Cash realized her husband and son were trapped in the house, the fire was too extensive for her to rescue them. Mr. Cash died in the house. Fire fighters pulled Cash's son from the house, but he subsequently died at the hospital.

Following an investigation, the Gwinnett County fire department determined that the fire started in the vicinity of the entertainment center, but they were unable

to determine the exact origin of the fire. Cash's expert opined that an internal component in the television's power supply board failed due to a manufacturing defect or mechanical damage, triggering a chain reaction that caused a fire.

1. Cash argues that the trial court erred in excluding her expert's testimony because his methods were reliable and his testimony was based on sufficient facts and data. We disagree.

"[W]hether expert testimony ought to be admitted under [OCGA § 24-7-702] is a question committed to the sound discretion of the trial court." (Citation omitted.) *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286, 289 (788 SE2d 421) (2016). We will not disturb the trial court's determination "absent a manifest abuse of discretion." *Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 279 (5) (658 SE2d 603) (2008).

OCGA § 24-7-702 governs the admissibility of expert testimony, and it requires that the trial court act as "gatekeeper to ensure the relevance and reliability of expert testimony." (Citation and punctuation omitted.) *Scapa Dryer Fabrics, Inc.*, supra, 299 Ga. at 289. The statute specifically provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise,

3

if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of *reliable principles and methods*; and (3) The witness has *applied the principles and methods reliably to the facts* of the case which have been or will be admitted into evidence before the trier of fact.

(Emphasis supplied.) OCGA § 24-7-702 (b)

Importantly,

in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 (1993); *General Electric Co. v. Joiner*, 522 U. S. 136 (1997); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U. S. 137 (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.

OCGA § 24-7-702 (f). The trial court has "substantial discretion in deciding how to test an expert's reliability." (Citation omitted.) *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 26 (1) (712 SE2d 537) (2011). The party seeking to rely on the expert bears the burden of proving the expert is sufficiently reliable. Id.

To admit expert testimony under OCGA § 24-7-702, the trial court must consider: (a) the qualifications of the expert; (b) the reliability of the testimony; and (c) the relevance of the testimony. *Scapa Dryer Fabrics, Inc.*, supra, 299 Ga. at 289.

4

These are three distinct factors, and courts should be careful not to conflate them. *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F3d 1333, 1341 (II) (A) (11th Cir. 2003). The trial court in this case focused solely on the reliability of the expert's testing, and accordingly, we do as well.

> [G]enerally, reliability is examined through consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training.

(Citations and punctuation omitted.) *Old Republic Nat. Title Co. v. RM Kids, LLC*, 337 Ga. App. 638, 647 (4) (788 SE2d 542) (2016), cert. denied (Feb. 27, 2017). This is not an exhaustive list of factors, and courts may consider them in a "flexible" manner. *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F3d 1338, 1341 (II) (11th Cir. 2013). The trial court may not exclude an otherwise sufficient expert "simply because it believes that the opinion is not – in its view – particularly strong or persuasive. The weight to be given to admissible expert testimony is a matter for the jury." *Seamon v. Remington Arms Co., LLC*, 813 F3d 983, 990 (III) (A) (2) (11th Cir. 2016).

Importantly, however, a trial court is not permitted to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U. S. 136, 146 (III) (118 SCt 512, 139 LE2d 508) (1997); see also *HNTB Ga., Inc. v. Hamilton-King*, 287 Ga. 641, 644 (1) (697 SE2d 770) (2010). That is precisely the problem with the expert's methodology in this case.

*a. Sufficient facts and data*

Under this prong, we consider the facts on which the expert relied to reach his conclusions. "Although an expert lacks direct evidence of the cause of the fire, the expert may rely upon circumstantial evidence to support his theory." (Citations and punctuation omitted.) *Great Northern Ins. Co. v. Ruiz*, 688 FSupp.2d 1362, 1371 (III) (A) (1) (a) (S.D. Ga. 2010).

Here, the expert formulated a hypothesis that the television was the source of the fire, based on the following circumstantial evidence: Cash's testimony that she saw the fire burning upwards from the middle of the entertainment center; the more significant amount of burning in the area of the speaker compared with the remainder

6

of the TV; and the destruction of the power board in the TV.[2] Based on this evidence, the expert conducted testing to establish the nature of the failure in the television.

*b. Principles and methodology*[3]

Cash's expert opined that the fire was caused by a series of events, beginning with one of two internal components called capacitors[4] located in the power supply board of the TV. Specifically, the expert stated that "Capacitor C612" failed due to a manufacturing defect or mechanical damage, and as a result, pressure increased inside Capacitor C612, causing the vented end of the capacitor to extend outward,

---

[2] Fire investigators agree that the origin of the fire was somewhere in the entertainment center, but they did not specifically identify the television.

[3] Cash contends that the trial court gave too much weight to the expert's alleged failure to comply with the Georgia Firefighter Standards and Training Examination Preparation and Prerequisites, NFPA 921, a standard that provides methodology for fire investigations. Cash contends that this document is merely a guide and not a legal standard. We note that federal courts have routinely accepted NFPA 921 as an appropriate standard for experts. *United Fire & Cas. Co.*, supra, 704 F3d at 1341 (II) (A). Regardless of whether the expert complied with NFPA 921, however, the trial court did not abuse its discretion in rejecting the expert's testimony as unreliable for the reasons discussed herein.

[4] A capacitor is a component that is used to store an electrical charge. It is comprised of one or more pairs of conductors, called "plates," that are separated by an insulator.

7

like "wings," and make contact with an adjacent component called the heat sink.[5] He contended that this contact created a "rather violent" electrical arc that was sufficient to ignite vapors and/or other materials inside the television. He then opined that the resulting flame burned the gasses as they escaped from Capacitor C612, igniting either a plastic sleeve surrounding the capacitor or a paper component in the power supply board. This ignition then caused flammable materials to drip and engulf components of the speaker located in the bottom right hand corner of the TV. This fire, he claimed, eventually ignited the remainder of the plastic base of the TV, and spread beyond the television. To prove this hypothesis, the expert designed a protocol to reverse engineer the cause of the fire. Problematically, however, the expert's methodology required repeated manipulation to achieve his desired results.

Specifically, the expert testified that, to complete the first step of his hypothesis, it was critical to establish that the "wings" from Capacitor C612 made contact with the neighboring heat vent component. At the outset, the expert manipulated the experiment in a way that did not reflect the conditions in existence on the day of the fire because he removed a safety fuse from the TV to trigger the

_____

[5] A heat sink is a component that is designed to absorb and dissipate excess heat.

8

venting of Capacitor C612's wings. However, there was no evidence that the safety fuse was missing from the LG TV at issue at the time of the fire. Moreover, in conducting this experiment, he used a different brand of capacitor than the one in the LG television.

Although by industry standards, the capacitor and heat vent are placed at least 3 mm apart,[6] the expert was never able to get the wings to span a distance more than 1.5 mm when conducting his experiments. Because this distance was insufficient for the wings to establish contact with the heat vent on their own, the expert electronically simulated the contact between the two in order to progress to testing the next step of his hypothesis.

After forcing the contact between the capacitor's wings and the heat sink, the next phase of the expert's experiment was designed to support his hypothesis that this contact caused a flame which ignited vapors or materials and then ignited plastic or paper inside Capacitor C612. The expert testified that it was critical that this step create a flame. However, the expert was not able to create such a flame merely by

---

[6] There is no evidence that these components were closer than industry standard in the LG TV at issue.

forcing contact between these two components. Thus, to progress the experiment to the next phase, the expert had to hold a lighter at the vents to ignite the vapors.

The next step in the expert's hypothesized chain reaction was that the flame from the vapors would ignite shrink wrap in the capacitor and catch fire, which would ultimately spread to the speaker located near the bottom of the LG TV. Again, the expert was required to manipulate the experiment to achieve the desired result of dripping hot plastic because that did not occur on its own. Even when the expert forced the plastic to drip, these drippings did not ignite the cotton ball, which the expert had placed under them to simulate the flammable speaker components.

At every step of the expert's experiment, the results failed to trigger the next event of his expected chain reaction unless he forced the result he desired and proceeded to the next step. Contrary to Cash's argument on appeal, the trial court's rejection of this hypothesis is not a critique of the expert's results. Instead, it is a finding that the expert employed an unreliable methodology that is inconsistent with the standard under *Daubert*, 509 U. S. at 595 (II) (B).

Not only did the expert's methodology include unrealistic manipulation, he also failed to establish that his methodology has been peer-reviewed or used by

10

others, or had otherwise obtained approval in the scientific community.[7] When asked if his methods were generally accepted in the scientific community, the expert averred that *he* was a member of the scientific community, and he had created the test, and then he boldly claimed that his test "will pass muster." Yet, he could name only one other person who has approved of it. Moreover, although the expert claimed that his testing was published in an article, he could not name the publication.

In short, the trial court did not abuse its discretion, under these facts, in concluding that the expert's methodology was unreliable under *Daubert*.

*c. Application of the methodology to the facts*

As discussed above, the expert's methodology consisted of his repeated manipulation to progress his testing and show that the fire originated in the television. However, there is no evidence that the circumstances the expert created in his experiment existed in the television on the day of the fire. The admission of expert testimony under *Daubert* is left to the trial court's sound discretion, and this is sufficient basis for the trial court to reject the expert testimony. See *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F3d 1054, 1058-1059 (II) (A) (8th Cir. 2005)

---

[7] At least one other court has rejected this expert based on a similar methodology. See *Whirlpool Corp. v. Camacho*, 298 SW3d 631, 642-643 (III) (Tex. 2009).

11

(testing that was not conducted under the conditions at the time of the fire was not reliable).

Cash argues that the expert's methodology was sound because investigators agreed that the origin of the fire was in the entertainment system, and the expert used process of elimination to determine that the television was the source. Although process of elimination can be a reliable means of ascertaining the source of a fire, such eliminations must be made through reliable scientific investigation and testing, which the trial court found was not done in this case. See *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F3d 915, 921 (II) (A) (11th Cir. 1998). For the reasons explained above, we find no abuse of discretion in the trial court's analysis.

Finally, Cash argues that the trial court's concerns about the expert's testing go to weight and credibility rather than admissibility. See *Seamon v. Remington Arms Co., LLC*, 813 F3d 983, 990 (III) (A) (2) (2016). We do not agree. The issue is not whether the expert's *opinion* about the source of the fire is correct, but rather whether the *methodology* he employed to reach that conclusion is reliable. Where, as here, the analytical gap between the data and the expert's opinion is too remote, the trial court does not abuse its discretion by excluding the expert's testimony. *Joiner*, supra, 522 U. S. at 146 (III).

In summary, the trial court based its decision to exclude the expert testimony here on the unreliability of the expert's methodology, specifically, the expert's manipulation of the testing at every step of the process. On these facts, the trial court did not abuse its discretion.

2. Cash next argues that the trial court erred in granting LG's motion for summary judgment. We disagree.

> On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations and punctuation omitted.) *Campbell v. Landings Assn., Inc.*, 289 Ga. 617, 618 (713 SE2d 860) (2011).

In her complaint, Cash alleged breach of express warranty, breach of implied warranty of merchantability, strict liability, and negligence. She also pled claims for unjust enrichment and restitution.

In light of our conclusion in Division 1 that the trial court properly excluded the expert testimony, Cash had no evidence to establish her claims that the television was the cause in fact or source of the fire, and her claims against LG necessarily fail.

13

See *Fletcher v. Water Applications Distrib. Group, Inc.*, 333 Ga. App. 693, 696 (773 SE2d 859) (2015), cert. denied, - Ga. - (2016), reversed in part on other grounds, *Certainteed Corp. v. Fletcher*, 300 Ga. 327 (794 SE2d 641) (2016) (causation is element of negligence claim); *Foothills Pharmacies, Inc. v. Powers*, 313 Ga. App. 630, 632 (2) (722 SE2d 331) (2012) (absent evidence of causation, plaintiff could not establish claim for breach of express warranty claim); *Boswell v. Overhead Door Corp.*, 292 Ga. App. 234, 235 (664 SE2d 262) (2008) (plaintiff must prove causation to succeed on strict liability theory); *Wilson v. J & L Melton, Inc.*, 270 Ga. App. 1, 3 (1), n. 1 (c) (606 SE2d 47) (2004) (to prove a claim for breach of implied warranty of merchantability the plaintiff must prove causation). Thus, in the absence of any evidence of causation, the trial court properly granted summary judgment to LG on these claims.

Finally, Cash's claims for equitable relief fail. Cash had an adequate remedy at law, *Besser v. Rule*, 270 Ga. 473, 474 (510 SE2d 530) (1999), and she did not plead unjust enrichment as an alternate theory of recovery based on a failed contract. Thus, her claim for such relief cannot succeed. *Wachovia Ins. Svcs., Inc. v. Fallon*, 299 Ga. App. 440, 449 (6) (682 SE2d 657) (2009).

14

For the foregoing reasons, the trial court's order excluding Cash's expert testimony and the grant of summary judgment to LG are affirmed.

*Judgment affirmed. Doyle and Reese, JJ., concur.*