**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A1691. OUANZIN et al. v. COAST DENTAL SERVICES, INC., et al.

MILLER, Presiding Judge.

In this dental malpractice dispute, Lucien Ouanzin and Jennifer Ouanzin appeal from the trial court's order granting a directed verdict in favor of Dr. Yasuko Musashi, DDS,[1] Coast Dental Services, Inc., and Coast Dental of Georgia, P.C. (collectively "Defendants"). On appeal, the Ouanzins argue that (1) a directed verdict was improper because the evidence was sufficient to prove injury and damages; (2) the trial court erred by excluding expert testimony from Dr. Paul Baker regarding treatment options; and (3) the trial court erred by refusing to reopen the evidence to present testimony from Dr. Glenn Maron about possible treatment options. Although

---

[1] There is a discrepancy in the record in the spelling of Dr. Musashi's name. We spell Dr. Musashi's name as it is spelled in the Defendants' brief.

we conclude that the trial court did not abuse its discretion in denying the Ouanzins' request to reopen the evidentiary portion of the trial, we conclude that the trial court erred by granting the Defendants' motion for directed verdict and that the trial court erred by excluding Dr. Baker's testimony. We therefore reverse the trial court's order granting the Defendants' motion for directed verdict.

> A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. A grant of directed verdict is a ruling that the evidence and all reasonable deductions therefrom demand a particular verdict. It is illogical to say such a finding will be upheld if there is any evidence to support it. A grant of directed verdict can be upheld only where we determine that all the evidence demands that verdict. This requires a de novo review. It is correct to say that a directed verdict cannot be granted if there is any evidence to support a contrary verdict, but there cannot be 'some evidence' that all the evidence demands a particular verdict.

(Citation and punctuation omitted.) *Moore v. Singh*, 326 Ga. App. 805 (755 SE2d 319) (2014).

So viewed, the record shows that on April 1, 2008, Lucien Ouanzin sought dental treatment from Dr. Yasuko Musashi at Coast Dental of Georgia, P.C. and

2

Coast Dental Services, Inc. Lucien observed a dark discoloration in his mandible[2] while examining the x-ray taken by Dr. Musashi. Lucien asked Dr. Musashi about the discoloration, and she advised him that everything was fine but that he had a cavity in one tooth and that another tooth needed to be extracted.[3] Dr. Musashi referred him to Atlanta Oral and Maxillofacial Surgery to have the extraction performed, but due to issues in the referral process, he was unable to receive treatment there. Lucien then went to another dental office and had the same teeth extracted.

In September 2011, while grocery shopping with his wife and family, Lucien began to feel ill and when he checked his blood pressure, he noticed that it was higher than usual. After his mandible began to swell, Lucien went to the North Fulton Health Center where he was diagnosed with an ameloblastoma, an endogenic tumor, in his lower right mandible. He was referred to Grady Hospital, where doctors removed the tumor and took a portion of a bone in Lucien's leg and placed it in his mandible.

As a result of the surgery, Lucien was left with a limp and suffered pain in his leg. Lucien also had complications with the bone in his mandible, such that he would

---

[2] The mandible is the lower jaw.

[3] Dr. Musashi also testified that she did not observe any abnormalities or tumors in Lucien's x-rays.

need at least eight additional surgeries, and bones would have to be harvested from his shoulder, knee cap, and his hips. Additionally, Lucien had no sensation in a portion of his face, he no longer had a sense of taste or smell, and his wife had to grind his food to make it soft enough for him to eat. Lucien also could no longer jog, play sports, nor walk long distances. According to Lucien, his medical bills from Grady Hospital totaled $508,383.61.

The Ouanzins filed suit against Dr. Musashi, Coast Dental of Georgia, P.C., and Coast Dental Services, Inc.,[2] asserting claims of dental malpractice and loss of consortium,[3] and the case proceeded to a jury trial. At trial, Dr. Alexander Kerr, a professor at New York University's College of Dentistry, testified that he reviewed the x-ray taken by Dr. Musashi in April 2008 and that Dr. Musashi deviated from the standard of care by failing to notice the abnormalities in Lucien's mandible which were observable in the x-ray. Dr. Kerr also testified that based on the x-ray, Dr. Musashi should have tested Lucien's teeth and referred him to an oral surgeon. Dr.

_____

[2] The Ouanzins also filed suit against a number of other individuals and organizations for various claims, none of which are relevant to this appeal.

[3] The Ouanzins also asserted claims of negligent failure to maintain x-rays and dental records, fraudulent destruction of x-rays, fraudulent alteration of dental records, and requested punitive damages, but the Ouanzins later dismissed these claims without prejudice.

Paul Baker, an oral and maxillofacial surgeon, testified that he also reviewed the x-ray taken by Dr. Musashi and that Dr. Musashi should have observed the abnormalities in Lucien's mandible from the x-ray. He noted that Lucien's x-ray showed a significant change in bone density in the roots of his teeth. According to Dr. Baker, Dr. Musashi should have referred Lucien to a specialist for further evaluation. Dr. Baker also testified that had the lesion been properly diagnosed in 2008, Lucien would not have had to undergo as drastic of a procedure to remove the tumor in 2011 because the tumor was "much smaller" and was "confined to a much smaller area" of Lucien's mandible.

After the Ouanzins rested their case, the Defendants moved for a directed verdict, arguing that the Ouanzins failed to present testimony showing that Lucien suffered unnecessary damages as a result of the failure to diagnose the tumor in 2008. The trial court granted the motion for directed verdict and ruled that the Ouanzins failed to present evidence "to prove the injury and damages caused by Dr. Musashi's alleged failure to recognize radiographic indication of an ameloblastoma in Lucien Ouanzin's mandible in 2008." This appeal followed.

1. First, the Ouanzins argue that the trial court erred by granting the Defendants' motion for a directed verdict on the basis that the Ouanzins failed to present evidence of injury and damages. We agree.

> To recover in a medical malpractice case, a plaintiff must show . . . a violation of the applicable medical standard of care [and] that the purported violation or deviation from the proper standard of care is the proximate cause of the injury sustained. In other words, a plaintiff must prove that the defendants' negligence was both the cause in fact and the proximate cause of his injury.

(Citation omitted.) *Moore*, supra, 326 Ga. App. at 808-809 (1). "In a medical misdiagnosis case, the plaintiff must show to any reasonable degree of medical certainty that the injury could have been avoided, had the physician complied with the applicable standard of care." (Citation and punctuation omitted.) *Knight v. Roberts*, 316 Ga. App. 599, 604 (1) (a) (730 SE2d 78) (2012).

The facts of this case are analogous to those in *Moore*. There, the decedent was taken to the hospital after falling in her home. *Moore*, supra, 326 Ga. App. at 805. At the hospital, the decedent complained of her inability to put weight on her ankle, but her x-ray did not reveal that her leg was fractured. Id. A therapist assessed the decedent and found that her pain centered on her knee and tibial tuberosity, but the

6

doctor did not follow up on the therapist's findings or order any additional x-rays. Id. at 806. The decedent later sought treatment from another doctor who discovered that the decedent's leg had been fractured but that it had healed in a displaced position. Id. The doctor who operated on the decedent's leg was forced to break the bone in order to set it with pins to heal in the correct position. Id. At trial, the estate's expert testified that the first doctor could have discovered the fracture using a CT scan or an MRI and that the fracture could have been treated without surgical intervention if the first doctor had discovered the fracture. Id. at 808. The trial court granted the defendants' motion for directed verdict on the grounds that the estate failed to present evidence that the defendants proximately caused the decedent's injuries and damages. Id. at 808. We found, however, that the estate presented evidence which created a jury issue as to whether the doctor had complied with the standard of care in evaluating the decedent's condition and whether the failure to diagnose the fracture led to the decedent having to undergo a more complicated surgical procedure. Id. at 809 (1). We stated that "[t]he jury . . . could have found that *while surgery could have been required in any event, the failure to diagnose resulted in approximately two months of lack of treatment and a more complicated surgery or recovery period*." (Emphasis

supplied.) Id. at 810 (1). Therefore, we held that the trial court erred by granting the defendants' motion for a directed verdict. Id. at 810 (1).

Here, the Ouanzins presented expert testimony from both Dr. Kerr and Dr. Baker that Dr. Musashi deviated from the standard of care in her interpretation of Lucien's x-ray by failing to notice the abnormalities in Lucien's mandible. Both Dr. Kerr and Dr. Baker testified that Dr. Musashi should have referred Lucien to another specialist or oral surgeon for further evaluation. According to Dr. Baker, Lucien's tumor was a slow-growing "aggressive" tumor that if left untreated over time would cause significant deformity and bone loss. Therefore, had the tumor been properly diagnosed in 2008, Lucien would not have had to undergo as drastic of a surgery to remove it because the tumor was "much smaller" and was "confined to a much smaller area" of Lucien's mandible in 2008.

We conclude that a jury issue existed as to whether Dr. Musashi complied with the standard of care in interpreting Lucien's x-ray and failing to refer him for further evaluation, and whether the failure to accurately interpret Lucien's x-ray led to further complications such that a more drastic surgical procedure was required in 2011 than would have been required in 2008. Here, the Ouanzins presented expert testimony that Dr. Musashi should have discovered the abnormalities in Lucien's mandible

8

which were observable in his x-ray. Also, the jury could have found that, while surgery on Lucien's mandible would have been required in any event, the failure to diagnose the tumor in 2008 resulted in nearly three years of lack of treatment and a more drastic surgical procedure in 2011. Because the Ouanzins presented evidence to create a jury issue as to whether Dr. Musashi deviated from the standard of care and whether the delayed diagnosis resulted in more drastic surgery than would have been required had the tumor been properly diagnosed in 2008, the trial court erred by granting the Defendants' motion for directed verdict. See *Moore*, supra, 326 Ga. App. at 810 (1).

2. Next, the Ouanzins argue that the trial court erred by excluding testimony from Dr. Baker about available treatment options for Lucien's tumor. We agree.[3]

"Whether expert testimony ought to be admitted under OCGA § 24-7-702 is a question committed to the sound discretion of the trial court. We will not disturb the trial court's determination absent a manifest abuse of discretion." (Citations and punctuation omitted.) *Cash v. LG Electronics, Inc.*, 342 Ga. App. 735, 736 (1) (804 SE2d 713) (2017).

---

[3] Because this issue is likely to recur on retrial, we will address this enumeration of error.

9

"OCGA § 24-7-702 governs the admissibility of expert testimony, and it requires that the trial court act as gatekeeper to ensure the relevance and reliability of expert testimony." (Citation and punctuation omitted.) Id. The statute provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

OCGA § 24-7-702 (b). Thus, to admit expert testimony under OCGA § 24-7-702, a trial court must consider: "(a) the qualifications of the expert; (b) the reliability of the testimony; and (c) the relevance of the testimony. These are three distinct factors, and courts should be careful not to conflate them. The trial court in this case focused solely on the reliability of the expert's [testimony], and accordingly, we do as well." (Citations and punctuation omitted.) *Cash*, supra, 342 Ga. App. 737 (1).

> Generally, reliability is examined through consideration of many factors, including whether a theory or technique can be tested, whether it has been subjected to peer review and publication, the known or potential

10

rate of error for the theory or technique, the general degree of acceptance in the relevant scientific or professional community, and the expert's range of experience and training. This is not an exhaustive list of factors, and courts may consider them in a 'flexible' manner. The trial court may not exclude an otherwise sufficient expert simply because it believes that the opinion is not — in its view — particularly strong or persuasive. The weight to be given to admissible expert testimony is a matter for the jury.

(Citations and punctuation omitted.) Id.

Here, the Ouanzins attempted to elicit testimony from Dr. Baker about possible treatment options which would have been available if the tumor was diagnosed in 2008, which the Ouanzins contended were less drastic than the procedure Lucien had to undergo in 2011. The Defendants objected and argued that Dr. Baker was not qualified to testify about possible treatment options in 2008 because he testified in his deposition that he would not have been confident with the New York State Board[4] reviewing a case in which he gave treatment options for one of his patients based only on the x-ray taken by Dr. Musashi. The Defendants further argued that Dr. Baker's testimony was inadmissible because he had also testified that he would not make

_____

[4] Dr. Baker is licensed by the New York State Board.

11

treatment recommendations to a patient based only on the type of x-ray taken by Dr. Musashi, but would instead tell the patient that additional information was needed. The trial court ruled that Dr. Baker's testimony was unreliable and therefore inadmissible because his deposition testimony contradicted his proffered trial testimony in that he did not testify in his deposition that he would have recommended particular treatment options to a patient based on the type of x-ray taken by Dr. Musashi.

Even if such testimony were contradictory, a contradiction in an expert's testimony "is no cause for disregarding it and the fact that an expert witness's testimony is contradictory has never rendered that testimony inadmissible." (Citation omitted.) *Swint v. Alphonse*, 348 Ga. App. 199, 205 (1) (820 SE2d 312) (2018). Instead, "[c]ontradictions go solely to the expert's credibility, and are to be assessed by the jury when weighing the expert's testimony." (Citations omitted.) *Moore*, supra, 326 Ga. App. at 811 (2). Accordingly, the trial court erred in ruling that Dr. Baker's testimony was unreliable and therefore inadmissible based solely on an alleged contradiction in his deposition testimony.

Moreover, we reject the Defendants' argument that Dr. Baker's testimony was inadmissible because he had not performed one of the possible treatment options for

Lucien within five years prior to the case.[5] It is true that, in medical malpractice actions, OCGA § 24-7-702 allows the admissibility of an expert's opinion if the expert has been regularly engaged in

(A) [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; or

(B) [t]he teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in teaching others how to perform the procedure, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue[.]

OCGA § 24-7-702 (c) (2) (A)-(B). In interpreting 24-7-702 (c) (2) (A)-(B), however, the Supreme Court of Georgia has expressly rejected the argument that an expert is

---

[5] One of the possible treatment options that would have been available for Lucien in 2008 was a marginal resection, but Dr. Baker had not performed that particular procedure within the previous 15 years.

13

unqualified to render his or her opinion if the expert had not performed a particular medical procedure at issue within five years prior to the case. The Court made it clear that

> [a] careful reading of the text of OCGA § 24-7-702 (c) (2) (A) and (b) shows that Rule 702 (c) (2) (A) and (b) *do not require an expert actually have performed or taught the very procedure at issue*. Rather, these provisions require only: that the expert has actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given; that his actual professional knowledge and experience is derived from the expert having been regularly engaged in the active practice of such area of specialty for at least three of the last five years or the teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession; and that the expert has been regularly engaged in active practice or teaching with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure or teaching others how to perform the procedure.

(Citations and punctuation omitted; emphasis in the original.) *Zarate-Martinez v. Echemendia*, 299 Ga. 301, 313 (2) (788 SE2d 405) (2016). Hence, "by the plain terms of the statue, the pertinent question is whether an expert has an appropriate level of knowledge in performing the procedure or teaching others how to perform the

procedure, not whether the expert himself has actually performed or taught it." (Citation and punctuation omitted.) Id. Accordingly, for the aforementioned reasons, we conclude that the trial court manifestly abused its discretion in excluding Dr. Baker's testimony at trial.

3. Finally, the Ouanzins argue that the trial court erred by refusing to reopen the evidence to permit them to present testimony from Dr. Glenn Maron about possible treatment options that were available had the tumor been properly diagnosed in 2008. As stated in Division 1, the Ouanzins presented some testimony through Dr. Baker establishing that Lucien would not have had to undergo as drastic of a surgical procedure in 2008 as he did in 2011 had the tumor been properly diagnosed. Thus, such testimony from Dr. Maron would have merely been cumulative of the testimony the Ouanzins already presented. Therefore, the trial court did not abuse its discretion in refusing to reopen the evidence. See *Greg A. Becker Enterprises, Ltd. v. Summit Inv. Mgmt. Acquisitions I, LLC*, 314 Ga. App. 721, 725 (3) (725 SE2d 841) (2012) (holding that the trial court did not abuse its discretion in denying a request to reopen the evidence where the evidence the party sought to admit was cumulative of that which had already been presented).

Accordingly, for the reasons provided above, we reverse the trial court's order granting the Defendants' motion for directed verdict.

*Judgment reversed. Rickman and Reese, JJ., concur.*