**SECOND DIVISION
MILLER, P. J.,
MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**April 20, 2020**

# In the Court of Appeals of Georgia

A20A0534. ALLEN v. CFYC CONSTRUCTION, LLC.

MERCIER, Judge.

In this contract dispute, Bryce Allen appeals from a trial court order rejecting his defense of impossibility of performance and granting partial summary judgment to CFYC Construction, LLC ("CFYC") on its claim for breach of contract. Allen also appeals from the denial of his motion to exclude the testimony of CFYC's expert witness. For the following reasons, we affirm the trial court's denial of Allen's motion to exclude the expert's testimony, but we reverse the grant of summary judgment to CFYC on its breach of contract claim.

This Court reviews the grant of summary judgment de novo and construes the evidence in the light most favorable to the nonmovant. *Toyo Tire North America Mfg. v. Davis*, 299 Ga. 155, 161 (2) (787 SE2d 171) (2016). To prevail on a motion for

summary judgment, the movant must demonstrate that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. OCGA § 9-11-56 (c).

Construed in favor of Allen, the record reveals that in December 2013, Allen entered into a lot purchase and sale agreement ("the agreement") with CFYC to sell to CFYC a "75 x 100 rear lot section" of real estate located at 1424 Hosea Williams Drive ("the property"). Under "Special Stipulations," the agreement provided: "Seller will survey property and expedite subdivide/replat of back half of parcel located at 1424 Hosea Williams Drive as a buildable lot." Although the agreement provided no time within which the subdivision was to be completed, it specified that the closing would take place "10 days after subdivision/replat." On December 15, 2015, two years after the parties entered into the agreement, Allen gave CFYC notice that he was terminating the agreement "as of this date" because "[t]he contract states that time is of the essence and that the parties must timely fulfill the terms of this contract, and after two years, it is obvious that time has not been of the essence in this matter. In my opinion, any further work on the subdivision of this property is counterproductive at this time."

2

Subsequent to Allen's unilateral termination of the agreement, CFYC filed a complaint against Allen for a declaratory judgment, specific performance, and breach of contract. CFYC also requested "bad faith attorney's fees." Allen answered and asserted that "the sale could not go forward because the subdivision of the Subject Property that would have created the Subject Lot was disallowed." Allen asserted that it was impossible for him to perform under the agreement, as he had previously stated to CFYC.

In July 2018, following some discovery, CFYC filed a motion for a declaratory judgment that the agreement is valid and enforceable, and submitted a request for either specific performance or damages for breach of contract; the trial court construed the request as a motion for partial summary judgment. CFYC also requested attorney fees pursuant to OCGA § 13-6-11. In support of its motion, CFYC relied upon the deposition of Brian Bishop, the real estate agent who "offered to help [Allen] with the property," and a report and testimony from Norman Koplon, a real estate development consultant.

Bishop, in his March 2018 deposition, stated that he "had some challenges getting [the property] subdivided," and that he paid Janice White, an "expeditor,"

$500 to help expedite the process.[1] Allen signed an affidavit of authorization for White to act as his agent "in pursuit of [the] application for the subdivision of the subject property." However, White told Bishop some time later that she had been "unsuccessful" and "had not been able to get the subdivision." White did not return Bishop's calls after she met "some of the same challenges we were" in subdividing the property. Bishop explained that they "had some challenges with the . . . Urban Design Commission ['UDC'] . . . the UDC had gotten their fingers in the pie and were saying that [the] neighborhood was potentially historic, . . . and they were voting to deny our request to subdivide." Bishop explained further that he was told by the UDC that "because we didn't meet historic platting – we would have to have an endorsement by our [city] councilperson." The record contains a letter from Bishop to the councilperson requesting that her office make a motion for legislative action for the subdivision of the property. Bishop, in explaining his efforts after Allen terminated the agreement, stated that he continued to work with the city councilperson's office, and that after White ceased her efforts, he attended

[1] Bishop explained that "'expeditors' . . . walk papers through planning or zoning and preparation. They're legs and arms for builders and developers."

4

neighborhood meetings, visited the city planning office of zoning several times, and met "with a number of folks to try and expedite" the subdivision of the property.

Koplon, CFYC's expert, submitted a report and testified at the hearing on CFYC's motions. He testified that he walked the property, reviewed the city ordinance regarding land subdivision, and met with the city's planning office and the urban planner from that office. Koplon explained that he reviewed the city code and checked to see whether the property was designated as a historic parcel, and determined that it was not so designated. He determined that the property "is not under the jurisdiction of the [UDC]" and concluded, based upon his investigation, that it was possible to subdivide the property.

The court denied CFYC's motion for declaratory relief on the ground that it was not an appropriate remedy, but granted CFYC's motion for partial summary judgment, finding that a contract existed and it was not impossible to perform, and that even if it was, "Allen failed to offer evidence to support his claim of impossibility by demonstrating an effort to secure approval for the necessary subdivision or refute the undisputed testimony of CFYC's expert that, if such effort had been made, approval of the subdivision was likely."

5

Allen now appeals, contending that the trial court erred in failing to give meaning to the term "expedite" in the agreement and ignored his evidence in concluding that no issue of fact remained regarding his defense of impossibility of performance. He also contends that the trial court erred in denying his *Daubert* challenge to Koplon's testimony.[2]

1. Allen does not dispute Koplon's qualifications as an expert. Rather, he argues that Koplon's testimony was not the product of reliable methods because it was not based upon sufficient facts or relevant time frames, and that Koplon's opinion is a "guess" based upon unreliable methodology.

> Whether expert testimony ought to be admitted under OCGA § 24-7-702 is a question committed to the sound discretion of the trial court. We will not disturb the trial court's determination absent a manifest abuse of discretion. OCGA § 24-7-702 governs the admissibility of expert testimony, and it requires that the trial court act as gatekeeper to ensure the relevance and reliability of expert testimony.

---

[2] In addition, Allen claims that the court erred in "finding that attorney's fees should be awardable." But this claim of error is belied by the record as the trial court made no ruling on CFYC's request for attorney fees. The court concluded only that Allen's breach of contract entitles CFYC to damages, "to be proven at a later hearing including, *potentially*, attorneys' fees." (emphasis supplied). In any event, we reverse the grant of summary judgment on the breach of contract claim in Division 2.

*Cash v. LG Electronics*, 342 Ga. App. 735, 736 (1) (804 SE2d 713) (2017) (citations and punctuation omitted). OCGA § 24-7-702 (b) provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

Allen argues that Koplon's testimony is irrelevant because it addresses only the ability to subdivide in 2017 and 2018 and provides nothing to assist the trier of fact in determining whether the property could have been subdivided from 2013 until 2015, when Allen terminated the agreement. He asserts further that Koplon's opinion is "pure ipse dixit" because Koplon did not discuss the UDC's involvement or consider the basis for its involvement. In determining whether the expert's testimony is relevant, "the trial court must consider the 'fit' between the expert testimony and the issues in dispute. . . . [E]xpert testimony is helpful to the trier of fact only to the extent that the testimony is relevant to the task at hand and logically advances a

7

material aspect of the case." *Scapa Dryer Fabrics v. Knight*, 299 Ga. 286, 290 (788 SE2d 421) (2016) (citations and punctuation omitted).

A material issue in dispute in this case is whether it was possible for Allen to subdivide the property. Allen asserted that it was impossible for him to perform this task in a timely manner because of the UDC's involvement. Koplon's testimony was relevant on this point, as he testified that the property was not "under the jurisdiction of the [UDC]." It was also relevant to show that under the city's subdivision ordinance, there were no restrictions that would prevent the property from being subdivided. Koplon's testimony is therefore relevant to the task at hand and logically advances a material issue in this case. See *Cartledge v. Montano*, 325 Ga. App. 322, 327 (1) (750 SE2d 772) (2013) ("[T]he appropriate standard for assessing the admissibility of the opinion of an expert is not whether it is speculative or conjectural to some degree, but whether it is wholly so.") (citation and punctuation omitted). Although Koplon did not opine as to whether Allen would have been able to get the property subdivided *in 2015* when Allen terminated the agreement, the weight to be given to his opinion is a matter to be addressed by the trier of fact. Id. at 328 (1). We therefore find no abuse of the trial court's discretion in allowing this expert testimony.

2. Allen asserts that the trial court erred in concluding that there was no issue of material fact concerning his defense of impossibility of performance. Where, as here, "a plaintiff moves for summary judgment, [it] has the burden of establishing the absence or non-existence of any defense raised by the defendant." *The Plantation at Bay Creek Homeowners Assoc. v. Glasier*, 349 Ga. App. 203, 204 (825 SE2d 542) (2019) (citation and punctuation omitted). We conclude that CFYC has not established the non-existence of Allen's impossibility defense as a matter of law.

Allen argues that this case "deals with the intersection of the reasonable time to perform and the defense of impossibility." He asserts that because he only agreed to "'expedite' the subdivision and did not agree to undertake any means necessary, the contract was impossible to perform on account of the [UDC]'s position."

The agreement between the parties provided that Allen would expedite subdivision of the property and that "time is of the essence." However, the agreement provided no specific time for performance. When a contract is missing a term indicating the time for performance, a reasonable time for performance will be implied. This is so even if the contract has a time-is-of-the-essence provision. . . . Generally, what is a reasonable time is a question of fact for the jury." *IH Riverdale,*

9

*LLC v. McChesney Capital Partners*, 280 Ga. App. 9, 13-14 (1) (c) (633 SE2d 382) (2006).

While it was Allen who terminated the agreement, he asserted that subdivision of the property was a duty that was impossible to perform. "Impossible, immoral, and illegal conditions are void and are binding upon no one." OCGA § 13-3-5. And impossibility of performance is a defense to the enforcement of a contract. See *Miller v. GGNSC Atlanta, LLC*, 323 Ga. App. 114, 118 (2) (746 SE2d 680) (2013). CFYC has not shown that Allen's defense of impossibility of performance does not exist, because a reasonable time for him to perform has yet to be determined. "Performance, to be effectual, must be accomplished by the party bound to perform, . . . and must be substantially in compliance with the spirit and the letter of the contract and completed within a reasonable time." OCGA § 13-4-20. A jury should determine what would be a reasonable amount of time within which Allen would be expected to subdivide the property, especially where, as here, the parties have pointed to no evidence of what typically would constitute a reasonable amount of time for such a task. See *Taliafaro v. Rose*, 220 Ga. App. 249, 251 (2) (469 SE2d 246) (1996) (jury issue existed as to what would be a reasonable time for party to perform under employment agreement); compare *DeMarco v. State Farm Mut. Auto. Ins. Co.*, 346 Ga. App. 882, 885 (1) (817

SE2d 360) (2018) (party failed to perform her obligations under settlement agreement within a reasonable time as a matter of law where she never executed release and did not make a demand for replacement settlement check for three years).

Based upon the particular facts of this case and our conclusion that a jury issue exists as to the reasonable time for performance, we cannot say that CFYC has shown the non-existence of Allen's defense of impossibly of performance as a matter of law. We therefore reverse the grant of summary judgment to CFYC on its claim for breach of contract.

*Judgment affirmed in part, reversed in part. Miller, P. J., and Coomer, J., concur.*